O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN B. CLARK, JR., <br><br> Plaintiff, <br><br> v. <br><br> TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, <br><br> Defendants. | Case No. CV 14-08248 DDP (PJWx) <br><br> **ORDER DENYING PLAINTIFF JOHN B. CLARK, JR.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> [Dkt. No. 20] |

Presently before the Court is Plaintiff John B. Clark, Jr. ("Clark")'s Motion for Partial Summary Judgment ("MSJ"). (Dkt. No. 20.) Having considered the parties' submissions and heard oral argument, the Court DENIES the motion and adopts the following order.

**I. BACKGROUND**

This coverage action arises out of an underlying state action brought by the Sea Court Homeowners Association (the "HOA") against Clark. Clark and his wive own a condominium unit in a three-unit condominium development known as "Sea Court," which is located in Manhattan Beach, California. (Statement of Uncontroverted Facts

and Conclusions of Law ("SUF"), Dkt. No. 20-2, ¶ 1.) The HOA is an unincorporated non-profit mutual benefit association that was created to manage and maintain the common areas and facilities of Sea Court. (Id. ¶ 2.) The HOA is governed by a three-member board of directors. (Id. ¶ 3.) From 1995 through March 27, 2014, Clark served as a member of the HOA's board of directors. (Id. ¶ 4.) From June 8, 2006 through March 20, 2013, Clark served as an officer of the HOA in various capacities, including as president, chief financial officer, and secretary. (Id. ¶ 5.)

On November 26, 2012, Clark, in his capacity as chief financial officer, opened an account in the HOA's name at Bank of America (the "BofA Account") to hold the HOA's funds pending the retention of a new management company for Sea Court. (Id. ¶ 6.) Clark's actions in opening the BofA Account were ratified by the HOA. (Id. ¶ 8.) On December 14, 2012, the other two members of the HOA board voted to remove Clark as chief financial officer of the HOA, a removal Clark contends was wrongful. (Id. ¶ 10.)

On February 15, 2013, $5,000 was withdrawn from the BofA Account.[1] (Id. ¶ 12.) Clark, allegedly concerned that the withdrawal was unauthorized, placed a 20-day "hold" on the BofA Account. (Id. ¶ 13.) At some point after the hold was placed, $5,000 was deposited back into the BofA Account. (Id. ¶ 14.) Subsequently, on March 20, 2013, the other members of the HOA voted

---

[1] The authority for this transfer is disputed. Clark contends that McCaul, another HOA board member, made this transfer unilaterally and without board approval. Defendant contends that the money was transferred, with approval, to the Sea Court property manager's client trust account.
Additionally, Clark contends the transfer amount was $5,010 whereas Defendant contends the transfer was in the amount of $5,000.

2

1  to remove Clark as secretary of the HOA.  (Id. ¶ 15.)  Clark
2  contends that this action was illegal.  (Id.)
3       Clark alleges that on March 21, 2013, Paul F. McCaul
4  ("McCaul"), at the time the chief executive officer of the HOA,
5  purposely commingled his own personal funds with the HOA's funds in
6  the BofA Account.  (Id. ¶¶ 18-19.)  Clark alleges that he was
7  concerned about the commingling, and that therefore, on March 25,
8  2013, he divided the money in the BofA Account and issued separate
9  checks disbursing the funds to himself and the other two HOA
10 members.  (Id. at 20-21.)
11      On April 12, 2013, after subsequent transfers and disputes
12 over the HOA's funds and maintenance at Sea Court, an action (the
13 "State Action") was filed in Los Angeles Superior Court on behalf
14 of the HOA against Clark.  (See generally id. ¶¶ 22-34.)  The
15 operative complaint in the State Action alleges claims against
16 Clark for (1) conversion, (2) injunctive relief regarding bank
17 account, (2) injunctive relief enjoining harassment, (3) fraud and
18 deceit, and (5) intentional interference with prospective economic
19 advantage and contractual relationships.  (See generally Clark
20 Decl. Ex 18, Docket No. 20-23.)  The HOA brought the claims in the
21 State Action against Clark in his individual capacity and allege
22 that Clark was acting solely for his own personal motives when he
23 committed the illegal acts.  (Id.)  The State Action is, at
24 present, still pending.
25      At the time the State Action was filed, the HOA was insured by
26 Defendant Travelers Casualty Insurance Company of America
27 ("Travelers").  (SUF ¶ 37; Clark Decl. Ex 14, Dkt. No. 20-18.)  The
28 terms of the policy, as it applies to director and officer

3

liability, are laid out in the "Directors and Officers Liability Owners Associate Claims Made Form" (the "D&O Form"). (Clark Decl. Ex 14 at 12-15.)[2] The D&O Form provides, in relevant part:

> 1. We will pay, in excess of the Retained Limit shown in the Schedule above for "loss" which an "insured" becomes legally liable to pay due to any civil claim(s):
>     a. made against the "insured"; and
>     b. caused by a "wrongful act."
> 2. We will pay, in excess of the Retained Limit shown in the Schedule above for "loss" which an "insured" becomes legally liable to pay due to any civil claim(s):
>     a. made against the "insured"; and
>     b. caused by a "wrongful act."

(Clark Decl. Ex. 14 at 12.) The D&O Form does not provide for a duty to defend: "We will not be called to assume charge of the settlement or defense of any claim or 'suit' brought or proceeding instituted against you or any insured.'" (Id. at 13.) The D&O Form defines "loss" as "adjudicated damages, settlements and 'defense expenses,'" with some exceptions. (Id. at 15.) "Defense Expenses" are defined as "reasonable and necessary legal fees and expenses incurred in defense of claims or 'suits,'" with some exceptions. (Id.) "Suit" is defined as "a civil proceeding in which damages to which this insurance applies are alleged." (Id.)

---

[2] All citations to exhibits that reference page numbers of exhibits use the pagination of the electronically docketed document containing the relevant exhibit.

4

"Insured" includes "any person who has been, now is, or shall become an 'Officer' or 'Director.'" (Id.) "Directors" are defined as "all of your directors or Members of your Board of Governors or Directors or Trustees." (Id.) "Wrongful act" is defined as any or all of the following: actual or alleged errors, misstatement or misleading statement, act or omission, or neglect or breach of duty by the "Directors" or "Officers" while acting in their capacity as such. (Id.)

## II.  LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial."

5

Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. DISCUSSION**

Clark moves for partial summary judgment on his first claim for declaratory relief regarding reimbursement of defense expenses. Clark argues that the undisputed facts support finding that the D&O Form provides for the reimbursement of the costs of Clark's defense in the underlying State Action.

Travelers opposes Clark's motion, arguing that Clark is not entitled to indemnification of costs because the State Action only includes allegations of actions Clark took when acting in his

6

individual capacity rather than his capacity as a director of the HOA. Travelers further contends that Clark's request for a declaration from this Court is over-broad and unripe.

Given that the underlying State Action is yet unresolved and no final decision has been made regarding the extent and scope of Clark's liability, Clark's coverage claim for a declaration regarding his right to reimbursement of defense costs is not yet ripe for decision. In insurance coverage disputes, the duty to defend is broader than the duty to indemnify. Montrose Chem. Corp. v. Superior Court, 6 Cal.4th 287, 295 (1993). This principle was created due to the difficulty of determining whether the underlying suit falls within the indemnification coverage before the suit is resolved. Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co., 76 Cal. App. 3d 272, 278 (1977). "The carrier's obligation to indemnify inevitably will not be defined until the adjudication of the very action which it should have defended." Gray v. Zurich Insurance Co., 65 Cal.2d 263, 272 (1966). Ultimately, it may turn out that the final judgment in the underlying suit was for damages not covered by the insurance policy. Accordingly, "while an insurer has a duty to defend suits which potentially seek covered damages, it has a duty to indemnify only where a judgment has been entered on a theory which is actually (not potentially) covered by the policy." Collin v. Am. Empire Ins. Co., 21 Cal. App. 4th 787, 803 (1994) (citing cases).

In the present action, both parties agree that the D&O Form explicitly disclaims any actual duty to defend on the part of Travelers. Rather, the dispute is over whether the defense costs Clark paid and will continue to pay out-of-pocket are covered by

7

the D&O Form and therefore whether Travelers has a duty to reimburse Clark's defense costs. The alleged duty to reimburse in this case is more akin to the duty to indemnify than the duty to defend. Clark alleges that, at a future date (presumably after judgment has been entered in the State Action), Travelers must reimburse Clark for, among other things, his defense costs. Clark contends this is so because the claims in the State Action are covered by the D&O Form. Although the reimbursement issue must be resolved at some point, now is not the time. The defense costs are part of the overall "loss" amount that is covered under the D&O Form if it turns out that the state court finds that Clark was acting in his capacity as an HOA director when he committed the alleged actions. The D&O Form guarantees that it will indemnify those costs that constitute the covered "loss" under the terms of the insurance policy. Furthermore, the D&O Form provides that recovery under the insurance endorsement "will not be made until your liability or an 'insured's' liability has been . . . rendered fixed and certain by final judgment; or . . . admitted by us in writing." (Clark Decl. Ex. 14 at 14.) Accordingly, Travelers only becomes obligated to pay for "loss," including defense costs, once a final judgment has been entered on the underlying covered suit. See <u>Save Mart Supermarkets v. Underwriters at Lloyd's London</u>, 843 F. Supp. 597, 603-04 (N.D. Cal. 1994) ("Under the terms of the Policy, therefore, the [defendant insurers] have an obligation to pay defense costs as a portion of ultimate net loss only if and when there is a determination that the underlying action is covered under the Policy."). Because the State Action has not been finally adjudicated and judgment has not been entered, the issue of

Travelers' potential duty to reimburse defense costs is not ripe for decision.

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES Clark's motion for partial summary judgment.

IT IS SO ORDERED.

Dated: August 28, 2015

DEAN D. PREGERSON
United States District Judge